UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re: ) | BK No.: 11-10709 |
| TRANS READ WAREHOUSE, INC., ) | (Jointly Administered) |
| ) | Chapter: 7 |
| ) | Honorable Jacqueline Cox |
| ) | |
| Debtor(s) ) | |

**ORDER (A) APPROVING THE PURCHASE AGREEMENT; AND (B) AUTHORIZING SALE OF ESTATE'S INTEREST IN PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, INTERESTS, CHARGES AND ENCUMBRANCES**

Upon the motion (the "Sale Motion") of Gus A. Paloian, not personally or individually, but solely as chapter 7 trustee ("Trustee"), for the substantively consolidated bankruptcy estate (the "Estate") of Trans Read Warehouse, Inc. ("Trans Read") and 7035 Properties, Inc. ("7035"), the above-captioned debtors (the "Debtor"), for entry of an order, pursuant to sections 105(a), and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the "Sale Order"), authorizing the sale (the "Sale") of Debtor's and its Estate's right, title, and interest in and to that certain tract comprising approximately 13.215 acres of land area including an approximate 379,187 s.f. concrete block and steel industrial building, an approximately 25,202 s.f. concrete block and steel flammable liquid warehouse, and an approximate 40,567 s.f. parking area commonly known as 7035 W. 65th Street, Bedford Park, Illinois 60638 (PINs 19-19-116-038-0000, 19-19-116-047-0000 and 19-19-113-006-0000) (collectively referred to as the "Property"), pursuant to that certain purchase agreement between the Trustee and PB IL OREO, LLC (the "Purchaser") attached hereto as Exhibit 1 (the "Purchase Agreement"), free and clear of all mortgages, licenses, security interests, pledges, liens, leases, rights of possession, claims of possession, entitlements of possession, leasehold estates, charges, claims, judgments, encumbrances, interests, options, rights, voting or other restrictions, rights-of-way, covenants, conditions, easements, encroachments, restrictions, other third-party rights or title defects or encumbrances of any nature whatsoever, whether legal or equitable in nature, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated and whether contractual, statutory or common law in origin, including any interest in property (collectively, the "Liens, Claims, Encumbrances, and Interests"); the Trustee having determined that the Purchaser submitted the highest, best and only offer for the Property after more than one year of marketing with a commercial real estate broker and three significant list price reductions; and a final hearing on the Sale Motion having been held on June 26, 2012 (the "Sale Hearing"); and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered: (i) the Sale Motion; (ii) any objections thereto; and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of the Estate, its creditors, and other parties in interest; and upon the record of the Sale Hearing, and after due deliberation thereon; and good cause appearing therefore;

IT IS HEREBY FOUND AND DETERMINED THAT:

A. Jurisdiction and Venue. The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates.** The statutory predicates for the relief sought in the Sale Motion are sections 105(a), and 363(b), (f), (m), and (n) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9014.

C. **Notice.** The notice of the Sale Motion, the Sale Hearing and the Sale are timely, adequate, and sufficient in accordance with 11 U.S.C. §§ 102(1) and 363 and Fed. R. Bankr. P. 2002, 6004, and 9014, other provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court, orders of the Bankruptcy Court, other applicable law, and due process. Such notice was good and sufficient, and appropriate under the particular circumstances, and no other or further notice of the Sale Motion or the Sale Hearing is or shall be required.

D. **Compliance with Sale Procedures Order.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has adequately marketed the Property and properly conducted the sale process in compliance with applicable law.

E. **Sale in Best Interests of the Estate.** Approval of the Purchase Agreement and consummation of the Sale at this time are in the best interests of the Estate, its creditors, and other parties in interest.

F. **Business Justification.** The Trustee has demonstrated both (i) good, sufficient and sound business purpose and justification, and (ii) compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b) and the sale is an appropriate exercise of the Trustee's fiduciary duties in that, among other things:

1. The Trustee, in conjunction with his real estate broker Epic Savage, LLC d.b.a Newmark Knight Frank Epic diligently and in good faith marketed and advertised the Property to secure the highest and best offer therefor by, among other things, mailing the Notice of Sale Hearing, the Sale Motion and a draft of this Sale Order to all creditors and parties in interest and other entities that had previously expressed an interest in the Property within the past year.

2. A sale of the Property at this time to the Purchaser pursuant to 11 U.S.C. § 363(b) is the only viable alternative to preserve the value of the Property, and maximize the Estate for the benefit of all constituencies. Delaying the Sale of the Property undoubtedly will result in a loss of value of the Property. Further, any delay of the Sale of the Property may result in the Purchaser's termination of the Purchase Agreement and result in an alternative outcome that will achieve far less value for creditors.

G. **Opportunity to Object.** A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the United States Trustee for the Northern District of Illinois; (ii) all creditors and parties in interest; (iii) other entities known to have expressed an interest to the Trustee in the Property; and (iv) other parties listed on the Service List.

H. **Arms-Length Sale.** The Purchase Agreement was negotiated, proposed and entered into by the Trustee and the Purchaser without collusion, in good faith, and from arm's length bargaining positions. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

I. **Good Faith Purchaser.** The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, the Purchaser is entitled to all of the protections afforded thereby. The Purchaser will be acting

in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Purchase Agreement and at all times after the entry of this Sale Order. The Purchaser has not engaged in collusive bidding or otherwise violated the provisions of § 363(n) of the Bankruptcy Code.

J.  Consideration. The Trustee conducted a sale process in accordance with, and has otherwise complied in all respects with, applicable bankruptcy law. The consideration provided by the Purchaser for the Property pursuant to the Purchase Agreement, the same being a credit bid totaling $3,200,000, (i) is fair and reasonable, (ii) is the highest and best offer for the Property, (iii) will provide a greater recovery for the Estate's creditors and other interested parties than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

K.  Prompt Consummation. The Sale must be approved and consummated promptly in order to preserve the value of the Property.

L.  Sale Free and Clear. The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, if the sale of the Property to the Purchaser were not free and clear of all Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever. The transfer of the Property to the Purchaser will be a legal, valid and effective transfer of the Property, and will vest the Purchaser with all right, title and interest of the Trustee, Debtor, and the Estate in the Property free and clear of all Liens, Claims, Encumbrances, and Interests, including without limitation any taxes arising under or out of, in connection with, or in any way relating to the operation of Debtor's business prior to the date (the "Closing Date") of the consummation of the Purchase Agreement (the "Closing"); provided, however, that nothing in this Sale Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of any post-closing liability to a governmental unit under police and regulatory statutes or regulations that the Purchaser would be subject to as the owner or operator of property after the date of entry of this Sale Order.

M.  No Successor-in-Interest. The Purchaser shall purchase the Property free and clear of all Liens, Claims, Encumbrances, and Interests pursuant to 11 U.S.C. § 363. The Purchaser does not constitute a successor-in-interest to Seller for any and all purposes, including under the successor liability, mere continuity, or de facto merger doctrines.

N.  Satisfaction of 11 U.S.C. § 363(f). The Trustee may sell the Property free and clear of all Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Those holders of Liens, Claims, Encumbrances, and Interests who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2). Those holders of Liens, Claims, Encumbrances, and Interests who did object are adequately protected by having their Liens, Claims, Encumbrances, and Interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they claim or may claim an Interest.

O.  No Fraudulent Transfer. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof. The consideration paid by Purchaser is the highest and otherwise best offer received by the Trustee, and such consideration constitutes reasonably equivalent value of the Property under the Bankruptcy Code and any other applicable law.

P.  Purchaser(s) Not Insiders. Immediately prior to the Closing Date the Purchaser was not an

"insider" or "affiliate" of Debtor as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed between the Purchaser and Debtor. The Sale to Purchaser does not amount to a consolidation, merger or de facto merger of the Purchaser and Debtor and/or the Estate, there is no substantial continuity between the Purchaser and Debtor, there is no continuity of enterprise between Debtor and the Purchaser, the Purchaser is not a mere continuation of Debtor or the Estate, and the Purchaser does not constitute a successor to Debtor or the Estate to the extent allowed by any state law.

Q. Legal, Valid Transfer. The transfer of the Property to Purchaser will be a legal, valid, and effective transfer of the Property, and will vest Purchaser with all right, title, and interest of the Trustee to the Property free and clear of all Liens, Claims, Encumbrances, and Interests.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. General Provisions. The Sale Motion is granted, as further described herein.

2. Objections Overruled. There being no timely objections filed, any and all objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled on the merits.

3. Approval of the Sale of Property. The Purchase Agreement, in the form attached to the Sale Motion and as amended as set forth in Exhibit 1 hereto, and all of the terms and conditions thereof, are hereby approved.

4. Direction to Consummate Sale. Pursuant to 11 U.S.C. § 363(b), the Trustee is authorized and directed to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement. The Trustee is authorized and directed to execute and deliver, and is empowered to perform under, consummate and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

5. Free and Clear Sale. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Sale Order, pursuant to 11 U.S.C. §§ 105(a) and 363(f), the Property shall be transferred to the Purchaser, and as of the Closing Date, shall be free and clear of all Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever, with all such Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale, with the same validity, force and effect which they now have as against the Property, subject to any claims and defenses the Trustee and/or Debtor may possess with respect thereto.

6. Credit Bid Approval. Purchaser (by and through The PrivateBank Trust & Company) is entitled to credit bid the Allowed Secured Claim (as such term is defined in the Purchase Agreement) under 11 U.S.C. § 363(k). Purchaser will have a significant deficiency claim, and its credit bid purchase amount shall not limit, impair or prejudice Purchaser's rights under 11 U.S.C. § 361 or 507(b), or any prior order entered in the above-captioned substantively consolidated bankruptcy case (or prior jointly administered bankruptcy cases of Trans Read and 7035, respectively).

7. Injunction. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever against or in Debtor or the Property, arising under or out of, in connection with, or in any way relating to, Debtor, the Property, the operation of Debtor's business prior to the Closing Date, or the transfer of the Property to Purchaser, hereby are forever barred and estopped from asserting against the Purchaser, its successors or assigns, its property, or the Property, such persons' or entities' Liens, Claims, Encumbrances, and Interests.

8. Good Faith. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing. The Purchaser is a purchaser in good faith of the Property, and the Purchaser is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

9. Transfer of Acquired Property. Pursuant to 11 U.S.C. § 363(b) and 363(f), the Property shall be transferred to the Purchaser on the Closing Date free and clear of Liens, Claims, Encumbrances, and Interests whatsoever with all Liens, Claims, Encumbrances, and Interests of any kind or nature to attach to the net proceeds of the Sale, if any, in the order of their priority, with the same validity, force, and effect which they now have as against the Property, subject to any claims and defense the Trustee, the Estate, or Debtor may possess with respect thereto.

10. Direction to Creditors. On the Closing Date of the Sale, each of the Estate's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens, Claims, Encumbrances, and Interests in the Property, if any, as such Liens, Claims, Encumbrances, and Interests may have been recorded or may otherwise exist.

11. This Sale Order shall be effective as a determination that, on the Closing Date, all Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever existing as to the Trustee or the Property prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. All entities who are presently, or on the Closing Date may be, in possession of some or all of the Property are hereby directed to surrender possession of the Property to the Purchaser on the Closing Date, including, but not limited to, returning any keys, passwords, or other means of access to the Property.

12. Subject to the terms and conditions of this Sale Order, the transfer of the Property to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of the Trustee in and to the Property free and clear of clear of Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever.

13. Additional Provisions. The Purchase Price provided by the Purchaser for the Property under the Purchase Agreement (i) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, and (ii) is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

14. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing Liens, Claims, Encumbrances, and Interests in

Debtor or the Property shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, Encumbrances, and Interests which the person or entity has with respect to the Trustee, Debtor or the Property or otherwise, then the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Encumbrances, and Interests in the Property of any kind or nature whatsoever and the filing officer is hereby directed to accept the filing of the Sale Order by the Purchaser as evidence of the release of such Liens, Claims, Encumbrances, and.

15. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

16. Under no circumstances shall any holder of any Liens, Claims, Encumbrances, and Interest be able to commence, continue or otherwise pursue or enforce any remedy, claim or cause of action against the Purchaser.

17. Any amounts that become payable by the Trustee pursuant to the Purchase Agreement or any of the documents delivered by the Trustee pursuant to or in connection with the Purchase Agreement shall (a) constitute administrative expenses of the Estate and (b) be paid by the Trustee in the time and manner as provided in the Purchase Agreement, without further order of this Court.

18. The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Estate, and its creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Liens, Claims, Encumbrances, and Interests in the Property to be sold to the Purchaser pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. The Purchaser has not engaged in collusive bidding or otherwise violated the provisions of section 363(m) of the Bankruptcy Code.

19. The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

20. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Estate.

21. Notwithstanding Rules 6004(h), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Sale Order shall be final and appealable and immediately effective and enforceable upon its entry and there shall be no stay of execution of this Sale Order.

22. This Court retains jurisdiction to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining

Rev: 20120501_bko

jurisdiction to (a) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein, and (b) interpret, implement, and enforce the provisions of this Sale Order, including the provisions regarding turnover of Property to the Purchaser.

Enter:

*Jacqueline Cox*
United States Bankruptcy Judge

Dated: 6/27/12

**Prepared by:**

James B. Sowka
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Rev: 20120501_bko

# EXHIBIT 1

## REAL ESTATE PURCHASE AND SALE CONTRACT

This Real Estate Purchase and Sale Contract ("**Contract**") is entered into as of June 4, 2012 ("**Effective Date**") by and between **GUS A. PALOIAN** ("**Trustee**"), not individually or personally, but solely as the chapter 7 bankruptcy trustee of Trans Road Warehouse, Inc. (substantively consolidated with 7035 Properties Inc.) ("**Seller**") and **PB IL OREO, LLC**, an Illinois limited liability company ("**Buyer**"), the designee of The PrivateBank and Trust Company, an Illinois banking association ("**Lender**").

### RECITALS

A.  On March 15, 2011, Seller filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing its chapter 11 bankruptcy case in the Northern District of Illinois, Eastern Division ("**Bankruptcy Court**"), Case No. 11-10709 (together with its jointly administered chapter 11 case of 7035 Properties Inc., Case No. 11-10837, collectively, as substantively consolidated, "**Bankruptcy Case**").

B.  Lender holds an allowed prepetition secured claim against the Property (as defined below) and Seller in the Bankruptcy Case of Seller in the amount of $5,435,591 (as such amount is amended during the Bankruptcy Case, "**Allowed Secured Claim**"), together with accrued and accruing interest and costs, including attorneys' fees, and minus any reductions for post-petition payments received by Buyer from Seller.

### AGREEMENTS

For and in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, but subject to the terms and provisions of this Contract, Seller hereby agrees to sell and convey to Buyer, and Buyer hereby agrees to purchase Seller's right, title, and interest in and to that certain tract comprising approximately 13.215 acres of land area and including, without limitation, an approximate 379,187 s.f. concrete block and steel industrial building, an approximately 25,202 s.f. concrete block and steel flammable liquid warehouse, and an approximate 40,567 s.f. parking area (PIN# 19-19-116-038-0000, 19-19-116-047-0000 and 19-19-113-006-0000), all as more particularly described on Exhibit A attached hereto and made a part hereof, together with all of Seller's right, title and interest in and to any easements, rights-of-way or other interests in, on or to the described land, together with all improvements, fixtures and personal property located thereon, all and singular, and the rights and appurtenances pertaining thereto (the land and other property and rights which are described in this paragraph and which are being conveyed to Buyer pursuant to this Contract are herein together referred to as the "**Property**"), free and clear of all liens (including tax liens and any statutory or common law liens, possessory or otherwise), charges, claims, pledges, rights of ownership, rights of recoupment, offset, or setoff, security interests, conditional sale agreements or other title retention agreements, mortgages, deeds of trust, options, leases, rights of possession, claims of possession, entitlements of possession, leasehold estates, contracts, or other encumbrances or interests (collectively, "**Lien, Claim, Encumbrance, and Other Interest**" or "**Liens, Claims, Encumbrances, and Other Interests**" as the context dictates), and any monetary amounts which are secured by any Liens, Claims, Encumbrances, and Other Interests affecting the Property or the title thereto, for the price and upon and subject to the terms, provisions and conditions hereinafter set forth. Seller's conveyance to Buyer shall be by trustee's deed.

1.  **CONTRACT SALE PRICE:** The sales price for the Property is a total of THREE MILLION TWO HUNDRED THOUSAND AND ZERO/HUNDREDTHS DOLLARS ($3,200,000.00) ("**Sale Price**"), all of which shall be due and payable to Seller at Closing (as hereinafter defined) solely by offsetting and crediting the Sale Price against Lender's Allowed Secured Claim, as provided in 11 U.S.C. § 363(k). Lender's Allowed Secured Claim shall continue as an allowed secured claim in the Bankruptcy Case after the Closing Date; *provided, however,* that the amount of the Allowed Secured Claim shall be reduced, as of the Closing Date, only by the dollar-for-dollar amount of the Sale Price allocated to the Property.

2.  **CLOSING:**

    (a)  The closing of the sale ("**Closing**") shall take place at the offices of Chicago Title Insurance Company, 171 North Clark Street, Chicago, Illinois 60601 ("**Title Company**") on a mutually agreeable date, but in no event later than June 29, 2012, with the actual date on which the Closing occurs being herein referred

to as the closing date ("**Closing Date**"); *provided, however*, the Closing Date shall, in no event, occur prior to the date that the Bankruptcy Court enters a sale order in the Bankruptcy Case authorizing and approving this Contract and the transactions contemplated hereunder, and such sale order becomes a Final Order ("**Sale Order**"), unless Buyer expressly agrees to waive, in writing, the requirement that the Sale Order become a Final Order. "**Final Order**" means: (i) an Order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending, or (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such Order of the Bankruptcy Court shall have been affirmed by the highest court to which such Order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired. If the Closing Date has not occurred by June 29, 2012, other than by reason of a default by Buyer, Buyer shall have the right to terminate this Contract by notice to Seller, and, except as may otherwise be expressly set forth in this Contract, neither party hereto shall have any other or further rights, duties or liabilities under this Contract.

(b) **SELLER'S CLOSING RESPONSIBILITIES**: At the Closing, Seller shall deliver or cause to be delivered to Buyer or the Title Company, as the case may be, the following:

(i) An Owner's Title Insurance Policy in the amount of the Sales Price in favor of Buyer dated as of the Closing Date showing title to the Property to be vested in Buyer, subject to Buyer's payment of any fees, costs, and taxes set forth in section 5(e)(ii) of this Contract;

(ii) A trustee's deed ("**Deed**") quit claiming to Buyer the Seller's right, title, and interest in to the Property;

(iii) Transfer tax declarations, if required;

(iv) Evidence of Seller's capacity and authority to execute closing documents and close this transaction;

(v) A non-foreign person affidavit pursuant to Section 1445 of the Internal Revenue Code, as amended, and the Treasury Regulations thereunder;

(vi) Payment of Seller's expenses as necessary to close this transaction;

(vii) Entry of the Sale Order;

(viii) All documents, records and files relating to the Property;

(ix) Letter formally terminating any listing agreement(s) with any broker for Seller relating to the Property;

(x) Trustee agrees to use his best efforts to obtain tenant estoppel certificates (to be prepared by Buyer) respecting the lease and terms thereof;

(xi) Other documents duly executed reasonably necessary to close this transaction or reasonably required by the Title Company to issue a title policy with respect to the Property; and

(xii) Written confirmation from the Village, and if necessary the City of Chicago, that the Village, and if necessary the City of Chicago, approves the transfer of the Property from Seller to Buyer pursuant to the terms and conditions of this Agreement.

(c) **BUYER'S CLOSING RESPONSIBILITIES**: At the Closing, Buyer shall deliver or cause to be delivered to Seller or the Title Company, as the case may be, the following:

(i) Evidence of Buyer's capacity and authority to close this transaction;

(ii) Payment of Buyer's expenses as necessary to close this transaction; and

(iii) Other documents duly executed reasonably necessary to close this transaction.

3. **CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS:** Each of the following is a condition precedent to Buyer's obligation to purchase the Property pursuant to this Contract:

(a) **TITLE COMMITMENT:** Seller shall, within ten (10) calendar days after the Effective Date, obtain from the Title Company and deliver to Buyer, at Buyer's cost, a commitment for title insurance in the amount of the Sales Price ("**Commitment**") for a standard ALTA owner's policy to be issued by the Title Company, together with copies of all recorded instruments affecting the Property shown as exceptions in the Commitment.

(b) **SALE ORDER:** Entry, on or before June 28, 2012, of the Sale Order, in form and substance satisfactory to Buyer that authorizes and directs Seller to enter into and consummate this Contract and the sale transaction in its entirety, and shall further provide specific findings that: (a) the transfer of the Property by Seller to Buyer pursuant to this Contract (i) is or will be a valid, effective and enforceable transfer of the Property, (ii) vest or will vest Buyer with Seller's right, title, and interest in and to the Property, entirely free and clear of any and all Liens, Claims, Encumbrances, and Other Interests pursuant to section 363(f) of the Bankruptcy Code, (iii) constitute the best and highest offer or value received by Seller for the Property; (b) the Bankruptcy Court retains jurisdiction to enforce the provisions of this Contract in all respects; (c) the provisions of the Sale Order are non-severable and mutually dependent; (d) the transactions contemplated by this Contract are undertaken by Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code; (e) pursuant to section 363(n) of the Bankruptcy Code, the consideration paid under this Contract was not controlled by an agreement among potential bidders at the Sale Hearing; (f) the terms and provisions of the Sale Order shall remain in full force and effect upon the dismissal or closing of the Bankruptcy Case; (g) the Sale Order is effective immediately upon its entry, notwithstanding the period of the stay imposed pursuant to Bankruptcy Rule 6004(h); and (h) Buyer, as designee of Lender, is entitled to credit bid a portion of its Allowed Secured Claim (i.e., Sale Price) under 11 U.S.C. § 363(k).

(c) **BANKRUPTCY RELATED DOCUMENTS:** Seller shall prepare the pleadings and notice for approval of the sale of the Property pursuant to this Contract. Seller shall provide Buyer with an opportunity to review and comment on the sale motion papers and notices and the proposed form of Sale Order prior to their filing or delivery.

4. **BUYER'S OBLIGATIONS:**

(a) **GOVERNMENTAL APPROVALS:** Buyer hereby acknowledges and agrees that Buyer shall be solely responsible for obtaining any and all necessary governmental approvals including development and building permits, appearances, subdivisions, plats, zoning, re-subdivisions, re-plats, rezoning, site plans, traffic, utility and drainage approvals required by any governmental authority having jurisdiction over the Property, to enable Buyer to purchase and develop the Property in accordance with Buyer's intended use ("**Governmental Approvals**"). Prior to Closing, Seller, at no cost and expense to Seller, shall cooperate with Buyer and join with Buyer in the signing of any documents necessary to obtain such Governmental Approvals. Seller shall have the right, but not the obligation, to join with Buyer as a co-applicant on any filings or documents made or executed as a part of obtaining the Governmental Approvals; *provided, however,* that in no event shall Seller be obligated, prior to Closing, to sign or deliver any such documents which bind Seller or the Property or create easements or dedications on final plats in respect to the Property. In the event all such Governmental Approvals are not obtained by June 15, 2012, Buyer may terminate this Contract by written notice to Seller delivered prior to June 26, 2012. Upon Seller's request, Buyer shall assign to Seller (such assignment to be in form and substance reasonably acceptable to Seller) all of Buyer's rights and interests in and to the Governmental Approvals (if any).

(b) **DUE DILIGENCE:** Buyer has completed its due diligence with respect to the Property. Notwithstanding the foregoing, the Buyer shall have the right to enter the Property from and after the date hereof through the Closing. In this regard, Buyer or Buyer's designated agents may enter the Property by contacting Christine Campbell (phone: 708.594.9750), whereupon Buyer will be provided access to the Property. In the event the transaction described in this Contract shall not close, Buyer shall restore the Property to its prior condition, if changed as a result of Buyer's or Buyer's agent's, contractor's and consultant's entry onto the Property as a

condition precedent to Buyer's right of access to the Property for the purposes hereinabove set forth, Buyer hereby covenants and agrees that Buyer and all of Buyer's agents entering onto the Property shall maintain in force liability insurance in an amount of not less than Two Million and No/100 ($2,000,000) in respect of the injury to or death of a single person and in an amount of not less than Three Million and No/100 ($3,000,000) in respect of any one accident, issued by a company licensed to transact insurance business in the State of Illinois. Seller shall be named as an additional insured on such policies. Buyer will provide Seller with a certificate of insurance consistent with these requirements prior to entry on the Property. Buyer shall keep the Property free from any liens arising out of any work performed, materials furnished or obligations incurred by or on behalf of Buyer or Buyer's agents, contractors and consultants which obligation shall survive termination of this Contract. If any such lien at any time shall be filed, Buyer shall cause the same to be discharged of record within ten (10) calendar days thereafter by satisfying the same or, if Buyer, in Buyer's discretion and in good faith determines that such lien should be contested, by recording a bond or obtaining a title indemnity acceptable to Seller. Buyer hereby agrees to indemnify, defend and hold Seller harmless from and against any mechanics', materialmens', laborers' or other lien which results from the activities of Buyer or any of Buyer's agents on the Property. The foregoing indemnity and restoration provisions shall survive the termination of this Contract in the event the transaction contemplated by this Contract does not close. Whether or not the transaction described in this Contract shall close, Buyer shall indemnify, defend and hold Seller harmless from and against all claims, actions, damages, liability, loss, costs, attorney's fees and expenses related to or arising from the Buyer's entry onto the Property; provided that in no event shall Buyer be obligated to restore the Property or indemnify Seller for Buyer's mere discovery and any pre-existing adverse conditions at the Property.

5. **OTHER AGREEMENTS:**

(a) **TITLE INSURANCE COSTS; TITLE APPROVAL:** Buyer shall be responsible for all title insurance costs, including the premium for the Owner's Title Insurance Policy and any endorsements thereto. Notwithstanding the foregoing, Buyer shall not be required to object to any exceptions that relate to liens recorded against the Property with Seller's consent following the Effective Date, which Seller shall be obligated to remove the same as a condition to the Closing for Buyer's benefit.

(b) **PROPERTY CONDITION; AS IS, WHERE IS:** Buyer acknowledges and agrees that Buyer performed its due diligence of the Property. Buyer also acknowledges and agrees that Buyer is relying on Buyer's (or Buyer's representatives') due diligence of the Property and not upon any statements (oral or written) that may have been made or may be made by Seller or any of Seller's representatives. As a material part of the consideration for this Contract, Buyer hereby agrees to accept the Property on the Closing Date in its "AS IS, WHERE IS" condition, with all faults, and without representation(s) and/or warranty(ies) by Seller of any kind, express or implied, or any arising by operation of law.

(c) **BROKER'S FEE:** Buyer represents and warrants that no real estate commissions, finders' fees or brokers' fees have been or will be incurred in connection with the sale of the Property by Seller to Buyer. Seller represents and warrants that no real estate commission payment is due to Epic Savage, LLC d/b/a Newmark Knight Frank Epic based on the proposed credit bid sale to Seller on account of the broker listing agreement approved by the Bankruptcy Court on August 30, 2011.

(d) **POSSESSION:** Possession of the Property, subject to the rights of parties claiming under the Permitted Exceptions, shall be delivered to Buyer at Closing in broom clean condition and otherwise in accordance with the requirements set forth in this Contract.

(e) **SALE EXPENSES:** The following sale expenses shall be allocated between the parties, as follows:

(i) SELLER'S EXPENSES: All costs of preparation of the Deed; and other expenses stipulated to be paid by Seller under other provisions of this Contract.

(ii) BUYER'S EXPENSES: All of Buyer's due diligence costs and expenses; all city, state and county transfer taxes (to the extent that they are not exempted under applicable law); all

expenses incurred in obtaining the Governmental Approvals; all title insurance costs, and other expenses stipulated to be paid by Buyer under other provisions of this Contract.

(f) **NO PRORATIONS**: Except as provided for herein, there shall be no prorations and Seller shall be responsible for payment of all outstanding water and other utility charges, assessments, current standby fees, and sales, ad valorem and any other taxes, fuels, prepaid service contracts, expenses and charges, and real estate taxes as of the Closing Date. Seller and Buyer acknowledge the need to (i) calculate the applicable common area maintenance charge liabilities ("CAM Charges") from Seller's counterparty tenants under the Assumed Leases and Contracts (as defined below) and (ii) allocate/prorate the benefit of the economic value of such CAM Charges between Seller and Buyer. Seller and Buyer agree to meet and confer regarding such CAM Charges calculation and proration issues and to use their best efforts to resolve such issues prior to June 15, 2012. In the absence of a resolution prior to June 15, 2012, the parties reserve their respective rights to address the CAM Charges matter before the Bankruptcy Court at the hearing seeking entry of the Sale Order.

(g) **CONDEMNATION/CASUALTY**: If any part of the Property is condemned or suffers a casualty prior to the Closing Date, Seller shall promptly give Buyer written notice of such condemnation or casualty. In the event of a condemnation or a casualty, Buyer shall have the option either (i) to apply the proceeds of any condemnation award or insurance proceeds (as applicable) actually received by Seller prior to the Closing to reduce the Sales Price provided herein (or, in the event such proceeds have not been so received, to accept at the Closing an assignment of Seller's rights therein and consummate the sale without reduction in the Sales Price; provided that in such event Seller shall not compromise, settle or adjust any claims without the prior written consent of Buyer), or (ii) to declare this Contract terminated by delivering written notice of termination to Seller within ten (10) calendar days after Buyer receives written notice of the condemnation or casualty. Nothing herein shall affect Lender's right to the proceeds of any condemnation award or insurance proceeds relating to the Property.

6. **TERMINATION; DEFAULT OR BREACH**:

(a) **TERMINATION**: This Contract may also be terminated by Buyer, in its sole and absolute discretion, upon written notice from Buyer to Seller, if: (i) the Bankruptcy Case is dismissed or closed; (ii) the Sale Order, in form and substance satisfactory to Buyer, shall not have been entered by June 28, 2012; (iii) any breach of this Contract by Seller has occurred; (iv) Seller fails to timely satisfy any or all of the conditions set forth in this Contract; (v) the consummation of any alternative sale of the Property with any person or entity other than Buyer; and (vi) the Closing does not occur by June 29, 2012.

(b) **DEFAULT OR BREACH BY SELLER**: If Seller defaults under or breaches this Contract for any reason other than Buyer's default or breach under this Contract, Buyer may, as Buyer's sole and exclusive remedies, and provided Buyer is not in breach or default hereof, either (i) terminate this Contract, or (ii) pursue specific performance of this Contract; provided however that the Trustee and Buyer reserve all of their rights under the Bankruptcy Code. Under no circumstances shall the Trustee be liable for damages arising from a default or breach by Seller of this Contract.

7. **SELLER'S REPRESENTATIONS AND WARRANTIES**:

(a) **AUTHORIZATION**: Subject to the entry and effectiveness of the Sale Order, Seller has the requisite power and authority to: (i) execute and deliver this Contract; (ii) perform its obligations hereunder; and (iii) consummate the transactions contemplated by this Contract.

(b) **OWNERSHIP OF PROPERTY**. Subject to the entry and effectiveness of the Sale Order, Seller has all necessary power and authority to transfer Seller's right, title, and interest in and to the Property to Buyer.

8. **MISCELLANEOUS**:

(a) Any notice required or permitted to be delivered hereunder shall be deemed received when personally delivered or three (3) calendar days following deposit of such notice in the United States Mail, postage prepaid, certified mail, return receipt requested, or one (1) business day after deposit with a reputable overnight delivery service (such as Federal Express), addressed to Seller or Buyer, as the case may be, at the addresses set forth below the signature of such party in this Contract.

(b) This Contract shall be construed under and in accordance with the laws of the State of Illinois, and all obligations of the parties created hereunder are performable in Cook County.

(c) This Contract shall be binding upon and inure to the benefit of the parties hereto and, subject to Section 9 hereof, their successors and assigns.

(d) In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal and unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Contract shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

(e) This Contract, including Exhibit A and Exhibit B attached hereto, the Sale Order and the other items delivered pursuant hereto, constitutes the complete agreement of the parties and supersedes all prior understandings or written or oral agreements between the parties respecting the within subject matter and cannot be changed amended or supplemented except by their written consent. This Contract as well as any amendments and/or supplements may be executed in counterparts, all of which shall be deemed to constitute one document.

(f) Time is of the essence in this Contract. No extension of time for performance of any obligation or act shall be deemed an extension of time for performance of any other obligation or act. Unless specified as business or working days, as used herein, any reference to a number of days shall mean calendar days. If any date for performance of any of the terms, conditions or provisions hereof shall fall on a Saturday, Sunday or legal holiday, then the time of such performance shall be extended to the next business day thereafter.

(g) This transaction is and all of the terms herein are to be treated as strictly confidential by Buyer, except that Buyer shall be permitted to disclose the existence or terms hereof to (i) any consultants, contractors, lenders and prospective lenders, agents, attorneys, accountants, brokers, employees, officers, directors, partners, managers, members, prospective partners and/or any and all persons directly or indirectly acting for or with Buyer, as applicable, on a "need to know" basis only; (ii) those who are actively and directly participating in the evaluation of the Property and the negotiation and execution of this Agreement or financing of the purchase of the Property and (iii) governmental, administrative, regulatory or judicial authorities in accordance with applicable legal requirements (including applicable securities laws). Any and all publicity releases or disclosures shall be subject to the review and reasonable approval by Buyer and Seller in advance. The provisions of this subsection (g) shall survive the termination of this Agreement, but shall terminate upon the Closing.

(h) A facsimile or electronic PDF of an executed Contract by Buyer and Seller in counterparts will be deemed acceptance upon delivery to the Title Company, followed by executed originals within five (5) calendar days after the Effective Date.

(i) Buyer warrants and represents to Seller that Buyer is not, and shall not become, a person or entity with whom Seller is restricted from doing business with under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of the Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and shall not engage in any dealings or transaction or be otherwise associated with such persons or entities.

9. **ASSIGNMENT**: On or before the Closing, upon prior notice to Seller (without requiring the prior written consent of Seller), Buyer may assign this Contract, but no such assignment shall relieve Buyer, from

performing all of the obligations, covenants and agreements of Buyer hereunder, whether arising prior to or after the date of such assignment.

10. **BANKRUPTCY COURT APPROVAL:** Seller and Buyer acknowledge that this Contract and the consummation of the transactions contemplated hereby are subject to prior approval by the Bankruptcy Court after issuance of notice to creditors, other interested parties and other parties requesting notice.

11. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES:** Seller shall cause all of Seller's unexpired leases and executory contracts affecting the Property listed on Exhibit B hereto ("**Assumed Leases and Contracts**") to be assumed by Seller and then assigned and turned over to Buyer at Closing (with Buyer paying any and all cure obligations under 11 U.S.C. § 365); provided, however, Buyer shall have until Closing to remove any and all such leases and contracts from the list of Assumed Leases and Contracts, with any such removed executory contracts and unexpired leases to be rejected and terminated by Seller in the Bankruptcy Case pursuant to the Sale Order or otherwise.

12. **TRUSTEE EXCULPATION:** This Contract is being executed by Trustee solely in his capacity as Chapter 7 Trustee of Seller, and not personally. It is expressly understood and agreed that Trustee's execution of this Contract and all other actions as taken by Trustee in connection with this Contract shall not be construed as creating a liability on the part of the Trustee in his individual capacity, and Buyer hereby agrees and acknowledges that Buyer shall not have any claim or cause of action against Trustee in his individual capacity with respect to such execution or other actions.

13. **BEDFORD PARK:** The parties hereto acknowledge and agree that the Village of Bedford Park, Illinois ("**Village**") has a local ordinance that requires an inspection by the Village of all properties within the Village prior to conveyances or transfers. No later than the Buyer's receipt of a fully executed Contract, the Buyer shall notify the Village of the pending sale of the Property and cause the Village to inspect the Property in accordance with its applicable ordinances/codes. In the event the Village requires repairs to the Property due to applicable building code or fire code violations, Buyer may: (a) cause such violations to be repaired prior to Closing so that the Property would be in compliance with local building and fire codes at Buyer's cost; or (b) elect to receive a reduction in the credit bid Sale Price in an amount equal to the estimated cost to complete such repairs so that the Property would be in compliance with local building and fire codes.

EXECUTED in multiple originals on the dates set forth by each party's signature, but effective upon the Effective Date.

| SELLER: | BUYER: |
|---|---|
| GUS A. PALOIAN, not individually or personally, but solely as Bankruptcy Trustee of Trans Read Warehouse, Inc. | PB IL OREO, LLC, an Illinois limited liability company |
| | By: PB Real Estate, LLC, as sole member of PB IL OREO, LLC |
| By: */s/ Gus A. Paloian* | By: */s/ James Thompson* |
| Name: Gus A. Paloian | Name: ~~Edward Corbett~~ James Thompson |
| Title: Bankruptcy Trustee of Trans Read Warehouse, Inc. | Title: Manager of PB Real Estate, LLC |
| Date: June 4, 2012 | Date: June 4, 2012 |

**Seller's Address/Telephone/Facsimile:**

Gus A. Paloian
Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603

Telephone No.: 312.460.5936
Facsimile No.: 312.460.7936
Email: gpaloian@seyfarth.com

with a copy to:

Jay A. Gitles
Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603

Telephone No.: 312.460.5937
Facsimile No.: 312.460.7937
Email: jgitles@seyfarth.com

**Buyer's Address/Telephone/Facsimile:**

PB IL OREO, LLC
70 W. Madison St., Suite 200
Chicago, Illinois 60602
Attn: Edward Corbett; Alan Fine

Telephone No.: 312-564-1827
Facsimile No.:
Email: ecorbett@theprivatebank.com

with a copy to:

Jeffrey A. Chadwick
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601

Telephone No.: 312.849.8256
Facsimile No.: 312.698.4592
Email: jchadwick@mcguirewoods.com

Exhibit A – Property Description
Exhibit B – Assumed Leases and Contracts

**EXHIBIT A**

## LEGAL DESCRIPTION

PARCEL 2:

THAT PART OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 19, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTH LINE OF THE NORTH 50 FEET OF SAID QUARTER-QUARTER SECTION, 25 FEET WEST OF THE EAST LINE THEREOF; THENCE SOUTH AT 90 DEGREES TO THE SAID SOUTH LINE OF THE NORTH 50 FEET OF SAID QUARTER-QUARTER SECTION, 665.0 FEET TO THE SOUTH LINE OF THE NORTH 715 FEET OF SAID QUARTER-QUARTER SECTION; THENCE WEST ALONG THE SOUTH LINE OF THE NORTH 715 FEET AFORESAID, 521.50 FEET TO ITS INTERSECTION WITH A CURVE CONVEX SOUTHEASTERLY AND HAVING A RADIUS OF 240.01 FEET; THENCE SOUTHWESTERLY ALONG SAID CURVE AN ARC DISTANCE OF 118.06 FEET TO THE POINT OF TANGENT OF SAID CURVE; THENCE CONTINUING SOUTHWESTERLY TANGENT TO LAST DESCRIBED CURVE, 44.09 FEET TO A POINT OF CURVE OF A CURVE CONVEX NORTHWESTERLY AND HAVING A RADIUS OF 222.01 FEET; THENCE CONTINUING SOUTHWESTERLY ALONG SAID CURVE AN ARC DISTANCE OF 67.55 FEET TO THE POINT OF TANGENT OF SAID CURVE; THENCE CONTINUING SOUTHWESTERLY TANGENT TO THE LAST DESCRIBED CURVE, 22.64 FEET; THENCE CONTINUING SOUTHWESTERLY ALONG A LINE DEFLECTING TO THE LEFT AND FORMING AN ANGLE OF 3 DEGREES 46 MINUTES WITH THE PROLONGATION SOUTHERLY OF THE LAST DESCRIBED LINE 48.80 FEET TO ITS INTERSECTION WITH A CURVE CONVEX NORTHWESTERLY AND HAVING A RADIUS OF 240.01 FEET (SAID LAST DESCRIBED LINE BEING THE TANGENT LINE AND THE SAID TANGENT LINE EXTENDED OF SAID CURVE); THENCE NORTHEASTERLY ALONG SAID CURVE AN ARC DISTANCE OF 60.81 FEET TO THE POINT OF TANGENT OF SAID CURVE; THENCE NORTH ALONG A LINE TANGENT TO THE LAST DESCRIBED 90.0 FEET TO A POINT 849.97 FEET SOUTH OF THE NORTH LINE OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ AFORESAID (MEASURED AT 90 DEGREES); THENCE NORTHEASTERLY ALONG A LINE WHICH FORMS AN INTERIOR ANGLE OF 171 DEGREES 31 MINUTES 25 SECONDS WITH THE LAST DESCRIBED COURSE, 131.79 FEET TO ITS INTERSECTION WITH A CURVE CONVEX NORTHWESTERLY AND HAVING A RADIUS OF 296.94 FEET; THENCE SOUTHWESTERLY ALONG SAID CURVE AN ARC DISTANCE OF 38.50 FEET TO A LINE DRAWN AT 90 DEGREES TO THE NORTH LINE OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ AFORESAID; THENCE NORTH ALONG SAID RIGHT ANGLE LINE, 678.81 FEET TO THE SOUTH LINE OF THE NORTH 50 FEET OF THE SAID QUARTER-QUARTER SECTION; THENCE EAST ALONG THE SAID SOUTH LINE OF THE NORTH 50 FEET OF SAID QUARTER-QUARTER SECTION, 620.0 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS.

PARCEL 3:

THAT PART OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 19, TOWNSHIP 38 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTH LINE OF THE NORTH 715 FEET OF SAID QUARTER-QUARTER SECTION, 31.19 FEET WEST OF THE EAST LINE THEREOF; THENCE WEST ALONG THE SOUTH LINE OF SAID NORTH 715 FEET, 521.5 FEET TO ITS INTERSECTION WITH A POINT OF CURVE CONVEX SOUTHEASTERLY HAVING A RADIUS OF 240.01 FEET; THENCE SOUTHWESTERLY ON SAID CURVE AN ARC DISTANCE OF 118.06 FEET TO THE POINT OF TANGENCY OF SAID CURVE; THENCE SOUTHWESTERLY ON A LINE TANGENT TO THE LAST DESCRIBED CURVE 44.09 FEET TO A POINT OF CURVE; THENCE SOUTHERLING ALONG A CURVED LINE CONVEX NORTHWESTERLY HAVING A RADIUS OF 222.01 FEET AN ARC DISTANCE OF 56.64 FEET TO ITS INTERSECTION WITH THE SOUTH LINE OF THE NORTH 920.0 FEET OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 19 AFORESAID; THENCE EAST ALONG THE SOUTH LINE OF THE NORTH 920.0 FEET OF SAID QUARTER-QUARTER SECTION, 590.91 FEET TO A POINT 33.10 FEET WEST OF THE EAST LIEN

OF SAID QUARTER-QUARTER SECTION; THENCE NORTH AT 90 DEGREES TO THE LAST DESCRIBED COURSE 205 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS.

PARCEL 4:

THAT PART OF BLOCK 44 IN FREDERICK H. BARTLETT'S CHICAGO HIGHLANDS OF THE NORTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 19, TOWNSHIP 38 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

NOTE: FOR THE FOLLOWING COURSES THE SOUTH LINE OF AFORESAID BLOCK 44 IS CONSIDERED AS BEARING DUE EAST.

COMMENCING AT THE SOUTHWEST CORNER OF AFORESAID BLOCK 44; THENCE EAST IN ITS SOUTH LINE, BEING THE NORTH LINE OF WEST 65TH STREET, A DISTANCE OF 303.37 FEET TO A POINT; THENCE NORTH 0 DEGREES 31 MINUTES 35 SECONDS WEST IN A LINE A DISTANCE OF 133.89 FEET TO A POINT; THENCE NORTH 89 DEGREES 59 MINUTES 35 SECONDS WEST IN A LINE A DISTANCE OF 303.04 FEET TO A POINT IN THE WEST LINE OF AFORESAID BLOCK 44, BEING THE EAST LINE OF NOTTINGHAM AVENUE; THENCE SOUTH 0 DEGREES 32 MINUTES 10 SECONDS EAST IN AFORESAID WEST LINE OF BLOCK 44 A DISTANCE OF 133.92 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS.

PROPERTY ADDRESS OF REAL ESTATE:

7035 W. 65TH STREET, BEDFORD PARK, ILLINOIS 60638

PERMANENT TAX IDENTIFICATION NUMBERS:

19-19-116-038-0000
19-19-116-047-0000
19-19-113-006-0000

**EXHIBIT B**

## SCHEDULE OF ASSUMED LEASES AND CONTRACTS

Subject to a right to remove any of said unexpired leases prior to Closing, Buyer hereby lists the following unexpired leases for Seller to assume and assign to Buyer at Closing:

- 10-1-09 Building Lease with American Transport Solutions/Dimension Logistics, Inc., as amended

- 2-1-98 Building Lease with Davis Athletic Equipment Company, as amended

- 7-1-98 Building Lease with Millennium, Inc., as amended

- 11-1-97 Building Lease with Out of Hand Graphics, Inc., as amended

- 8-4-95 Antenna Lease with U.S. Cellular/PrimeCo. Personal Communications, as amended

- As applicable, 2-24-06 Amended and Restated By-Laws of Clearing Sprinkler Association and all related documents, including without limitation any Certificates of Membership in the Association, as each may be amended