**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| TRANS READ WAREHOUSE, INC., | ) | Case No. 11-10709-JPC |
| 7035 PROPERTIES, INC. | ) | Case No. 11-10837-JPC |
| | ) | (substantively consolidated) |
| | ) | Hon. Jacqueline P. Cox |
| Consolidated Debtors. | ) | |
| | ) | Hearing Date:  March 16, 2017 |
| | ) | Hearing Time:  9:30 a.m. |
| | ) | |

**COVER SHEET FOR THIRD AND FINAL APPLICATION OF SEYFARTH SHAW LLP
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES
FOR LEGAL SERVICES PROVIDED TO GUS A. PALOIAN AS CHAPTER 7
TRUSTEE OF THE CONSOLIDATED DEBTORS
FOR THE PERIOD OF APRIL 1, 2012 THROUGH THE CLOSE OF THE CASE**

Name of Applicant:                                      Seyfarth Shaw LLP

Authorized to Provide Professional Services to:        Gus A. Paloian as Chapter 7 Trustee of the
                                                       Consolidated Debtors

Date of Appointment:                                   May 31, 2011, *nunc pro tunc* to May 13, 2011

Period for which Compensation                          April 1, 2012 through the Close of the Case
and Reimbursement is Sought:

Amount of Compensation Sought for this                 $128,695.50
 Period:

Amount of Expense Reimbursement Sought for             $   1,326.52
this Period:

Amount of Final Compensation Sought:                   $563,636.00

Amount of Final Expense                                $   9,308.26
Reimbursement Sought:

This is a:        Final Application

16044475v.1

| Prior Applications | Date Filed | Amount Requested | Amount Awarded |
|---|---|---|---|
| Trans Read Warehouse, Inc.<br>First Interim Application<br>05/13/11 - 09/30/11 | 11/10/11 | $143,012.12 [Dkt 175] | $143,012.12 [Dkt 185] |
| 7035 Properties, Inc.<br>First Interim Application<br>05/13/11 - 09/30/11 | 11/10/11 | $162,215.84 [Dkt 176] | $162,215.84 [Dkt 186] |
| Consolidated Application<br>10/01/11 - 03/31/12 | 06/04/12 | $137,694.28 [Dkt 204] | $137,694.28 [Dkt 217] |

Dated:  February 13, 2017

Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 7 Trustee of  the Consolidated Debtors

By: /s/ James B. Sowka
    Gus A. Paloian (06188186)
    James B. Sowka (6291998)
    Christopher J. Harney (6296683)
    SEYFARTH SHAW LLP
    131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
    Telephone:  (312) 460-5000

    ***Counsel to Chapter 7 Trustee Gus A. Paloian***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TRANS READ WAREHOUSE, INC. | ) | Case No. 11-10709-JPC |
| 7035 PROPERTIES, INC, | ) | Case No. 11-10837-JPC |
| | ) | (substantively consolidated) |
| Consolidated Debtors. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | Hearing Date:  March 16, 2017 |
| | ) | Hearing Time:  9:30 a.m. |

### THIRD AND FINAL APPLICATION OF SEYFARTH SHAW LLP
### FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES
### FOR LEGAL SERVICES PROVIDED TO GUS A. PALOIAN AS CHAPTER 7
### TRUSTEE OF THE CONSOLIDATED DEBTORS
### FOR THE PERIOD OF APRIL 1, 2012 THROUGH THE CLOSE OF THE CASE

Pursuant to Sections 105(a), 330 and 331 of the United States Bankruptcy Code, 11

U.S.C. §§ 101 through 1330, *as amended* (the "Bankruptcy Code"), Seyfarth Shaw LLP

("Seyfarth"), as counsel to Gus A. Paloian, not individually or personally, but solely in his

capacity as the duly-appointed Chapter 7 trustee (the "Trustee") of the consolidated bankruptcy

estates (the "Estates") of Trans Read Warehouse, Inc. ("Trans Read") and 7035 Properties, Inc.

("7035") (hereinafter collectively referred to as the "Consolidated Debtors"), hereby submits its

Third and Final Application for Compensation and Reimbursement of Expenses (the

"Application") as counsel to the Trustee of the Consolidated Debtors for legal services

performed, and expenses incurred, during the period of April 1, 2012 through the Close of the

Case (the "Application Period").  In support of this Application, Seyfarth respectfully represents,

as follows:

## I.    <u>INTRODUCTION</u>

1.    Seyfarth makes this Application pursuant to:  (i) Sections 105(a) and 330 of the

Bankruptcy Code;  (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (singularly, a

"<u>Rule</u>";  collectively, the "<u>Rules</u>");  (iii) certain applicable provisions of the Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, adopted by the Office of the United States Trustee;  (iv) Rule 5082-1 of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of

Illinois (the "<u>Court</u>");  (v) that certain Order of the Court entered on May 31, 2011, effective as

of May 13, 2011 authorizing Seyfarth's retention as counsel to the Trustee (the "<u>Trans Read</u>

<u>Retention Order</u>"); (v) that certain Order of the Court entered on May 31, 2011, effective as of

May 13, 2011 authorizing Seyfarth's retention as counsel to the Trustee (the "<u>7035 Retention</u>

<u>Order</u>"); and (v) other applicable case law.

2.    In making this Application, Seyfarth respectfully seeks an Order of this Court

awarding and directing payment from the Consolidated Debtors' Estates of:  (i) interim

allowance of compensation in the amount of $128,695.50 for professional services rendered by

Seyfarth on behalf of the Trustee during the Application Period; (ii) interim allowance of

reimbursement of actual and necessary expenses in the amount of $1,326.52 incurred by

Seyfarth in rendering such professional services to the Trustee in the Cases; and (iii) final total

allowance of fees in the amount of $564,942.00 and expense reimbursement of $9,308.26 (the

"<u>Fees and Expenses</u>").

## II.    <u>JURISDICTION</u>

3.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue

of this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and

1409. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)

and (b)(2)(A) and/or (O).

### III.    PROCEDURAL BACKGROUND

4.    On March 15, 2011, Trans Read filed its voluntary petition for relief under

Chapter 11 of the Bankruptcy Code.  On March 16, 2011, 7035 filed its voluntary petition for

relief under Chapter 11 of the Bankruptcy Code.  Trans Read previously filed for relief under

Chapter 11 of the Bankruptcy Code in 2009.  The Bankruptcy Court entered a final decree in

the 2009 bankruptcy case, Case No. 09-21854, on March 8, 2011.

5.    On April 18, 2011, The PrivateBank & Trust Company ("PrivateBank") filed an

Application to Convert the Trans Read and 7035 bankruptcy cases (collectively, the "Cases";

hereinafter, "Cases" collectively shall refer to the Debtors' cases and, "Trans Read Case" and

"7035 Case" shall refer to the individual bankruptcy cases of Trans Read and 7035,

respectively) from Chapter 11 to Chapter 7 because of, among other things, Debtors'

administrative insolvencies.  On May 5, 2011, the Bankruptcy Court entered orders converting

the Debtors' Chapter 11 cases to cases under Chapter 7.  On May 12, 2011, the United States

Trustee appointed Gus A. Paloian as the Trustee in the Cases.

6.    On May 31, 2011, the Bankruptcy Court granted the Trustee's Application for

Joint Administration of the Cases.

7.    On May 31, 2011, the Bankruptcy Court granted the Trustee's Applications to

employ Seyfarth Shaw, LLP, retroactive to May 13, 2011, as counsel to the Trustee in the

Trans Read Case and as counsel to the Trustee in the 7035 Case.

3

8.    On June 2, 2011, the Bankruptcy Court granted the Trustee's: (a) Application to Authorize the Trustee to Operate Debtors' Businesses, Retroactively, Pursuant to Bankruptcy Code Section 721; and (b) Application to Use Cash Collateral thru: June 15, 2011.

9.    On June 30, 2011, the Bankruptcy Court entered a Final Cash Collateral Order.

10.    Pursuant to Paragraph 11(d) of the Final Cash Collateral Order (Dkt. No. 124) entered in the Trans Read Case, the Bank agreed to fund "actual, necessary, reasonable fees and expenses incurred by Seyfarth Shaw…to the extent approved by order of this Court, subject to 11 U.S.C. §§330 and 331 and local rules of the Court (referred to herein as "Carve Out")."

11.    On February 29, 2012, the Bankruptcy Court entered an order granting the substantive consolidation of the 7035 and Trans Read Estates under consolidated Case No. 11-10709.

## IV.    FACTUAL BACKGROUND AND STATUS OF CASE

12.    Trans Read was in the business of providing warehouse space and inventory control.  Trans Read operated four warehouses with over 500,000 square feet of warehouse space, where it stored freight, including potentially hazardous materials owned by third party customers of Trans Read.  Trans Read's operations included the loading and unloading of freight on pallets from semi-trucks by forklift operators.  Trans Read's clients were responsible for all trucking arrangements.  In accordance with the order authorizing the Trustee to operate the Debtors' businesses, the Trustee managed the outward bound movement of all third party owned goods located at the Debtors' businesses.

13.    The Trustee investigated the Debtors' assets, performed necessary wind down operations, liquidated inventory, directed staff/employees, negotiated with PrivateBank, creditors and customers and sold the underlying real estate in the 7035 Case.

4

16044475v.1

## V.    III.  SUMMARY OF SERVICES RENDERED,
## AND EXPENSES INCURRED, BY SEYFARTH

### A.  Prior Applications for Compensation and Expense Reimbursement

14.    This Application is the Third and Final application for compensation and expense

reimbursement that Seyfarth has filed in these Cases as counsel to the Chapter 7 Trustee.

15.    On November 10, 2011, Seyfarth filed its first interim application for

compensation and expense reimbursement as Counsel to the Chapter 7 Trustee in the Trans

Read Case [*see* Dkt. No. 175] in which Seyfarth sought interim compensation in the amount of

$137,272.00 and expense reimbursement in the amount of $5,740.12.  On December 5, 2011,

the Court entered an order awarding Seyfarth interim compensation in the amount of

$137,272.00 and expense reimbursement in the amount of $5,740.12 [*see* Dkt. No. 185].

16.    On November 10, 2011, Seyfarth filed its first interim application for

compensation and expense reimbursement as Counsel to the Chapter 7 Trustee in the 7035

Case [*see* Dkt. No. 176] in which Seyfarth sought interim compensation in the amount of

$161,434.00 and expense reimbursement in the amount of $781.84.  On December 5, 2011, the

Court entered an order awarding Seyfarth interim compensation in the amount of $161,434.00

and expense reimbursement in the amount of $781.84 [*see* Dkt. No. 186].

17.    On June 4, 2012, Seyfarth filed the consolidated application for compensation and

expense reimbursement as Counsel to the Chapter 7 Trustee in the 7035 Case [*see* Dkt. No.

204] in which Seyfarth sought interim compensation in the amount of $136,234.50 and

expense reimbursement in the amount of $1,459.75.  On June 26, 2012, the Court entered an

order awarding Seyfarth interim compensation in the amount of $136,234.50 and expense

reimbursement in the amount of $1,459.75 [*see* Dkt. No. 217].

16044475v.1

**B.  Overview of Fees**

18.  During the Application Period, Seyfarth has:  (i) provided legal services to the

Trustee in the amount of $130,001.50.  Seyfarth has agreed to reduce its fees by $1,306.00, to

$128,695.50 (the "Fees") to offset an overpayment of Trustee fees as more fully explained in

the Final Report.

19.    The following table consists of a breakdown of the amount of Fees incurred by

each Seyfarth professional, including each such professional's:  (i) title, (ii) hourly rate, (iii)

total hours expended in providing legal services in the Cases, and (iv) the value attributable to

such legal services:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012<br>2013<br>2014<br>2015 | $600.00<br>$625.00<br>$650.00<br>$690.00 | 20.80 | $12,673.50 |
| J. Kelly Bufton | Partner | 2012 | $590.00 | 4.00 | $2,360.00 |
| Jay A. Gitles | Partner | 2012 | $495.00 | 2.90 | $1,435.50 |
| W. Andrew Douglass | Partner | 2012 | $440.00 | 5.00 | $2,200.00 |
| James B. Sowka | Partner | 2012<br>2013<br>2014 | $395.00<br>$405.00<br>$425.00 | 70.00 | $27,702.00 |
| Tobi Pinsky | Associate | 2012 | $360.00 | 14.00 | $5,040.00 |
| Christopher J. Harney | Associate | 2011<br>2012 | $305.00<br>$315.00 | 18.30 | $5,681.50 |
| Andrew A. Connor | Former Paralegal | 2012<br>2013 | $265.00<br>$280.00 | 84.90 | $22,578.00 |
| Jennifer M. McManus | Paralegal | 2012<br>2013<br>2014<br>2015 | $255.00<br>$270.00<br>$285.00<br>$300.00 | 180.40 | $46,947.00 |
| Sherry Klenk | Paralegal | 2012<br>2013 | $250.00<br>$265.00 | 1.90 | $487.00 |

6

16044475v.1

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Ricki Knapp-Podorovsky | Paralegal | 2012   $240.00 | 4.00 | $960.00 |
| Julie Ziegler | Case Assistant | 2013   $90.00<br>2014   $95.00<br>2015 $100.00 | 11.90 | $1,179.00 |
| Alice Shepro | Former Case Assistant | 2012   $90.00<br>2013   $95.00 | 8.40 | $758.00 |
| TOTAL | | | 426.50 | $130,001.50 |

20.   Biographies for the attorneys listed above who performed the bulk of the services in this matter during the Application Period were previously submitted to the Court as part of the First and Second Applications [see Dkt. Nos. 175, 176 and 204 at Exhibit 1].

21.   During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

22.   All of the compensation for which Seyfarth requests allowance and payment in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

23.   Seyfarth respectfully submits that its services rendered to the Trustee during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Debtors' Estates, as further discussed herein.

24.   Seyfarth further submits that the total fees sought herein, for services rendered during the Application Period, have been voluntarily reduced in the aggregate amount of $3,593.50, plus $1,306.00, for a total reduction of $4,899.50.

16044475v.1

## C.  Time Records

25.  Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

26.  Such records for the Cases, copies of which are grouped and attached hereto as **Exhibit 1** and which are incorporated herein by reference, set forth in detail:  (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, (iii) the amount of time spent on the services in one-tenth of one hour increments, and (iv) the identity of each Seyfarth professional who performed such services.

## D.  Breakdown of Fees by Category of Services Rendered

27.  For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into eight (8) categories, as follows:  (i) Case Administration;  (ii) Claims Administration and Analysis; (iii) Employee Benefits/Pension; (iv) Sale of Assets; (v) General Tax Matters; (vi) Activity Prior to Case Consolidation; (vii) Fee Applications; and (viii) Other Professional Fee Applications.

### CASE ADMINISTRATION (83.70 HOURS VALUED AT $23,890.50)

28.  During the Application Period, Seyfarth expended 83.70 hours, worth a value of $23,890.50 on behalf of the Trustee on matters of Case Administration.  This time primarily relates to services rendered to the Trustee in the furtherance,  performance and discharge of the Trustee's general administrative duties under the Bankruptcy Code and the operation of the Debtors' Businesses and includes:

8

A.    Corresponding and meeting with company representatives to address and resolve legal issues; addressing tenant and employee issues; overseeing payroll and related employee issues; analyzing the Debtors' executory contracts; advising the Trustee as to the removal, storage and disposal of inventory at the Trans Read premises; and preparing, monitoring and managing the Debtors' monthly budget in accordance with the various Court orders authorizing the operation of the Debtors' businesses and the use of cash collateral;

B.    Preparing all necessary pleadings, motions and notices for the proper representation of the Trustee including the Motion to Abandon Property; Motion to Use Estate Funds Outside of the Ordinary Course; and Motion to Set Administrative Claims Bar Date;

C.    Attending to the Trans Read Debtor's corporate compliance requirements;

D.    Advising the Trustee as to his duties and obligations under the Bankruptcy Code; and

E.    Maintaining case files and service lists for the Case.

29.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012<br>2013<br>2014<br>2015 | $600.00<br>$625.00<br>$650.00<br>$690.00 | 2.60 | $1,635.00 |
| James B. Sowka | Partner | 2012<br>2013<br>2014 | $395.00<br>$405.00<br>$425.00 | 11.40 | $4,538.50 |

9

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Christopher J. Harney | Associate | 2011 | $305.00 | 8.90 | $2,720.50 |
| | | 2012 | $315.00 | | |
| Andrew A. Connor | Former Paralegal | 2012 | $265.00 | 4.70 | $1,245.50 |
| | | 2013 | $280.00 | | |
| Jennifer M. McManus | Paralegal | 2012 | $255.00 | 52.00 | $13,380.00 |
| | | 2013 | $270.00 | | |
| | | 2014 | $285.00 | | |
| | | 2015 | $300.00 | | |
| Julie Ziegler | Case Assistant | 2013 | $90.00 | 0.30 | $27.00 |
| | | 2014 | $95.00 | | |
| | | 2015 | $100.00 | | |
| Alice Shepro | Former Case Assistant | 2012 | $90.00 | 3.80 | $344.00 |
| | | 2013 | $95.00 | | |
| **TOTAL:** | | | | **83.70** | **$23,890.50** |

**CLAIMS ADMINISTRATION AND ANALYSIS (38.30 HOURS VALUED AT $9,923.50)**

30.   During the Application Period, Seyfarth expended 38.30 hours of service, worth a value of $9,923.50, on behalf of the Trustee on matters related to Claims Administration and Analysis, including:

A.      Reviewing and analyzing claims filed against the Estate, including secured, priority tax and unsecured claims;

B.      Reviewing and analyzing the administrative claims involved in the ongoing operations during the Case;

C.      Revising and maintaining Trans Read administrative claims analysis spreadsheet and Trans Read and 7035 priority claims spreadsheets; and

D.      Resolving objections to all unresolved claims.

31.   A breakdown of the professionals providing services in this category is as follows:

16044475v.1

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012<br>2013<br>2014<br>2015 | $600.00<br>$625.00<br>$650.00<br>$690.00 | 1.60 | $1,051.00 |
| James B. Sowka | Partner | 2012<br>2013<br>2014 | $395.00<br>$405.00<br>$425.00 | 1.70 | $683.00 |
| Christopher J. Harney | Associate | 2011<br>2012 | $305.00<br>$315.00 | 1.30 | $409.50 |
| Andrew A. Connor | Former Paralegal | 2012<br>2013 | $265.00<br>$280.00 | 3.60 | $1,008.00 |
| Jennifer M. McManus | Paralegal | 2012<br>2013<br>2014<br>2015 | $255.00<br>$270.00<br>$285.00<br>$300.00 | 44.40 | $12,358.50 |
| Julie Ziegler | Case Assistant | 2013<br>2014<br>2015 | $90.00<br>$95.00<br>$100.00 | 7.20 | 712.00 |
| Alice Shepro | Former Case Assistant | 2012<br>2013 | $90.00<br>$95.00 | 1.10 | 99.00 |
| **TOTAL:** | | | | **60.90** | **$16,321.00** |

## EMPLOYEE BENEFITS/PENSION (62.20 HOURS VALUED AT $19,970.50)

32.    During the Application Period, Seyfarth expended 62.20 hours of service, worth a value of $19,970.50, on behalf of the Trustee on matters related to the Trans Read Debtor's 401(k) plan including:

A.    Advising the Trustee as to his duties and obligations with respect to the 401(k) retirement plan and as to the termination of the 401(k) retirement plan;

11

B.      Communicating with the Trans Read 401(k) plan administrator, and

preparing required forms, to ensure the proper transfer of responsibilities,

as appropriate, from the Trans Read Debtor to the Trustee;

C.      Conducting an audit of the Debtor's 401(k) retirement plan to determine

any funding deficiencies; and

D.      Preparing and filing Form 5500 and other 401(k) plan documents; and

E.      Terminating the 401(k) plan.

33.   A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012 $600.00<br>2013 $625.00<br>2014 $650.00<br>2015 $690.00 | | 5.50 | $3,310.00 |
| W. Andrew Douglass | Partner | 2012 $440.00 | | 5.00 | $2,200.00 |
| James B. Sowka | Partner | 2012 $395.00<br>2013 $405.00<br>2014 $425.00 | | 8.50 | $3,358.50 |
| Andrew A. Connor | Former Paralegal | 2012 $265.00<br>2013 $280.00 | | 22.30 | $5,909.50 |
| Jennifer M. McManus | Paralegal | 2012 $255.00<br>2013 $270.00<br>2014 $285.00<br>2015 $300.00 | | 14.50 | $3,700.50 |
| Sherry Klenk | Paralegal | 2012 $250.00<br>2013 $265.00 | | 1.90 | $487.00 |
| Ricki Knapp-Podorovsky | Paralegal | 2012 $240.00 | | 4.00 | $960.00 |
| Alice Shepro | Former Case Assistant | 2012 $90.00<br>2013 $95.00 | | 0.50 | $45.00 |
| **TOTAL:** | | | | **62.20** | **$19,970.50** |

12

**SALE OF ASSETS (136.95 HOURS VALUED AT $47,912.00)**

34.     During the Application Period, Seyfarth expended 136.95 hours, worth a value of

$47,912.00 on behalf of the Trustee on matters of related to the sale of the Debtors' personal

property and real property.  In connection therewith, Seyfarth advised the Trustee with respect

to the sale two of the Debtors' three parcels of real property including, (i) the parcel of

undeveloped land located at 7332 Lockwood Avenue in Bedford Park, Illinois; and (ii) the

warehouse and real property located at 5353 West 73rd Street in Bedford Park, Illinois - the

sale closed in December of 2011.  Seyfarth prepared and filed all relevant sale documentation

and administered to various post-closing issues.  Seyfarth also coordinated the marketing and

sale of a 1996 GMC Suburban of the Debtors and prepared and  filed all relevant court papers.

35.     A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012 | $600.00 | 7.75 | $4,650.00 |
| | | 2013 | $625.00 | | |
| | | 2014 | $650.00 | | |
| | | 2015 | $690.00 | | |
| J. Kelly Bufton | Partner | 2012 | $590.00 | 4.00 | $2,360.00 |
| Jay A. Gitles | Partner | 2012 | $495.00 | 2.90 | $1,435.50 |
| James B. Sowka | Partner | 2012 | $395.00 | 45.50 | $17,975.50 |
| | | 2013 | $405.00 | | |
| | | 2014 | $425.00 | | |
| Tobi Pinsky | Associate | 2012 | $360.00 | 14.00 | $5,040.00 |
| Christopher J. Harney | Associate | 2011 | $305.00 | 4.90 | $1,543.50 |
| | | 2012 | $315.00 | | |
| Andrew A. Connor | Former Paralegal | 2012 | $265.00 | 29.90 | $7,949.00 |
| | | 2013 | $280.00 | | |
| Jennifer M. McManus | Paralegal | 2012 | $255.00 | 26.90 | $6,859.50 |
| | | 2013 | $270.00 | | |
| | | 2014 | $285.00 | | |

13

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| | | 2015 | $300.00 | | |
| Alice Shepro | Former Case Assistant | 2012 | $90.00 | 1.10 | $99.00 |
| | | 2013 | $95.00 | | |
| **TOTAL:** | | | | **136.95** | **$47,912.00** |

### GENERAL TAX MATTERS (23.55 HOURS VALUED AT $6,589.00)

36.     During the Application Period, Seyfarth expended 23.55 hours, worth a value of $6,589.00 on behalf of the Trustee on matters related to the general tax matters in connection with payroll tax filings, 401(k) tax reconciliations and final tax returns.

37.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012 | $600.00 | 1.95 | $1,187.50 |
| | | 2013 | $625.00 | | |
| | | 2014 | $650.00 | | |
| | | 2015 | $690.00 | | |
| James B. Sowka | Partner | 2012 | $395.00 | 1.00 | $396.00 |
| | | 2013 | $405.00 | | |
| | | 2014 | $425.00 | | |
| Jennifer M. McManus | Paralegal | 2012 | $255.00 | 18.70 | 4,834.50 |
| | | 2013 | $270.00 | | |
| | | 2014 | $285.00 | | |
| | | 2015 | $300.00 | | |
| Alice Shepro | Former Case Assistant | 2012 | $90.00 | 1.90 | $171.00 |
| | | 2013 | $95.00 | | |
| **TOTAL:** | | | | **23.55** | **$6,589.00** |

### 7035 PROPERTIES - ACTIVITY PRIOR TO CASE CONSOLIDATION (14.70 HOURS VALUED AT $4,423.50)

38.     During the Application Period, Seyfarth expended 14.70 hours, worth a value of $4,423.50 on behalf of the Trustee on activity prior to case consolidation involving the

14

operations of 7035 Properties, particularly in connection with the processing of administrative claims/invoices.

39.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012<br>2013<br>2014<br>2015 | $600.00<br>$625.00<br>$650.00<br>$690.00 | 1.40 | $840.00 |
| Christopher J. Harney | Associate | 2011<br>2012 | $305.00<br>$315.00 | 3.20 | $1,008.00 |
| Jennifer M. McManus | Paralegal | 2012<br>2013<br>2014<br>2015 | $255.00<br>$270.00<br>$285.00<br>$300.00 | 10.10 | $2,575.50 |
| **TOTAL:** | | | | **14.70** | **$4,423.50** |

### FEE APPLICATIONS (52.90 HOURS VALUED AT $13,509.00)

40.    During the Application Period, Seyfarth expended 34.60 hours, worth a value of $9,181.00 in preparing (i) Seyfarth's Second Interim Fee Application for the consolidated cases, and (ii) the Trustee's Second Interim Fee Application for the consolidated cases.

41.    Based upon the fees requested, the value of time recorded for the preparation of Seyfarth's consolidated fee application and the Trustee's consolidated fee application represents approximately 4.5% of the total of the applications.

42.    In this Application, Seyfarth spent 18.90 hours, worth a value of $4,739.00 in connection with preparing, reviewing and revising its Third and Final Fee Application.

15

43. Based upon the fees requested, the value of time recorded for the preparation of Seyfarth's Third and Final fee application represents approximately 3.45% of the total of that application.

44. A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| James B. Sowka | Partner | 2012 | $395.00 | 1.40 | $553.00 |
| | | 2013 | $405.00 | | |
| | | 2014 | $425.00 | | |
| Andrew A. Connor | Former Paralegal | 2012 | $265.00 | 16.20 | $4,293.00 |
| | | 2013 | $280.00 | | |
| Jennifer M. McManus | Paralegal | 2012 | $255.00 | 30.90 | $8,223.00 |
| | | 2013 | $270.00 | | |
| | | 2014 | $285.00 | | |
| | | 2015 | $300.00 | | |
| Julie Ziegler | Case Assistant | 2013 | $90.00 | 4.40 | $440.00 |
| | | 2014 | $95.00 | | |
| | | 2015 | $100.00 | | |
| **TOTAL:** | | | | **52.90** | **$13,509.00** |

**OTHER PROFESSIONAL FEE APPLICATIONS (14.20 HOURS VALUED AT $3,783.50)**

45. During the Application Period, Seyfarth expended 14.20 hours, worth a value of $3,783.50 in preparing and filing Rally Capital Services' second and final fee applications.

46. A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATE | | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| James B. Sowka | Partner | 2012 | $395.00 | 0.50 | $197.50.00 |
| | | 2013 | $405.00 | | |
| | | 2014 | $425.00 | | |
| Andrew A. Connor | Former | 2012 | $265.00 | 8.20 | $2,173.00 |

16

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| | Paralegal | 2013   $280.00 | | |
| Jennifer M. McManus | Paralegal | 2012   $255.00<br>2013   $270.00<br>2014   $285.00<br>2015   $300.00 | 5.50 | $1,413.00 |
| **TOTAL:** | | | **14.20** | **$3,783.50** |

### E. <u>Incurred Expenses</u>

47.    Seyfarth maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee.   A complete listing of the Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 2** and which is incorporated herein by reference.

48.    As set forth in attached **Exhibit 2**, Seyfarth advanced $1,326.52 in Expenses in connection with the legal services it has provided to the Trustee during the Application Period. All of the Expenses for which Seyfarth requests reimbursement in this Application related to the discharge of Seyfarth's services, as requested by the Trustee, during the Application Period.

49.    A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

50.    The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.   Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

17

51.    Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Debtors' Estates at cost.

52.    Seyfarth respectfully submits that the Expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Debtors' Estate, as further discussed herein.

53.    Seyfarth further submits that the total expense reimbursement sought herein during the Application Period, have been voluntarily reduced in the aggregate amount of $1,208.31.

54.    The following chart summarizes the complete out-of-pocket costs associated with the categories of Seyfarth expenses:

| CATEGORY | EXPENSES INCURRED |
|---|---|
| Online Research | $21.80 |
| Chicago Messenger Service | $22.35 |
| Courier/Messenger | $73.47 |
| Copying @ .10 cents per page | $1,143.30 |
| Local Travel | $14.00 |
| Court Fees | $51.60 |
| **TOTAL** | **$1,326.52** |

## VI.  RELIEF REQUESTED

55.    Seyfarth respectfully requests that the Court:  (i) allow and award it on an interim basis (1) the Fees, consisting of $128,695.50 for legal services rendered to the Trustee, (2) the Expenses, in the amount of $1,326.52, incurred in relation to such services; (ii) allow and award it on a final basis (1) total fees in the amount of $563, 942.00 and (2) total expenses in

18

the amount of $9,308.26; and (iii) authorize and direct the Trustee to make prompt payment of

the Fees and Expenses to Seyfarth from the Debtors' Estates.

56.   A proposed order providing for the requested relief is attached hereto for the

Court's consideration.

## VII.  BASIS FOR THE REQUESTED RELIEF

### A.  Compensation Standards

57.   Pursuant to Section 331 of the Bankruptcy Code, a professional person employed

under Section 327 may generally apply for interim compensation from a bankruptcy court.  See

11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional

person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. §

330(a)(1)(A).

58.   In determining the "extent and value of compensation," this Court has endorsed

and applied the "'lodestar' approach—multiplying the number of actual and necessary hours

reasonably expended by a reasonable hourly rate[.]"  *In re* Wildman, 72 B.R. 700, 712 (Bankr.

N.D. Ill. 1987) (Schmetterer, J.);  accord *In re* UNR Indus., Inc., 986 F.2d 207, 210-11 (7th

Cir. 1993) (lodestar approach provides fair compensation under Section 330);  see also City of

Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992)

("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting

jurisprudence.  We have established a 'strong presumption' that the lodestar represents the

'reasonable' fee[.]").

59.   To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has

"emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same

compensation as they would earn in performing similar services outside the context of

19

bankruptcy."[1]  *In re* UNR Indus., Inc., 986 F.2d at 210 (emphasis added).  The statutory aim is

twofold:  (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be

deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  UNR

Indus., Inc., supra;  see also *In re* Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to

encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the

law.") (citing legislative history to Section 330).

60.    As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly

"stressed that the best measure of the cost of an attorney's time is what that attorney could earn

from paying clients"—that is, the attorney's "standard hourly rate."  Gusman v. Unisys Corp.,

986 F.2d 1146, 1150 (7th Cir. 1993);  see Small v. Richard Wolf Med. Instruments Corp., 264

F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some

'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (*In

re* Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

61.    Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate

. . . is considered to be the presumptive market rate."  Small, 264 F.3d at 707.  Moreover, "[t]he

lawyer's regular rate is *strongly presumed* to be the market rate for his or her services."

Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S.

1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001);  see Moriarty v. Svec, 429 F.3d 710, 718 (7th

Cir. 2005) (quoting same);  see also Central States, S.E. & S.W. Areas Pension Fund v. Central

Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would

charge 'to the meanest villain', *is* the market rate for that lawyer's services.") (emphasis added

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy
matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases."  In re
UNR Indus., Inc., 986 F.2d at 208-09;  see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993)
(Schmetterer, J.) (quoting same).

and quoting Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom.

Mason & Dixon Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117

S. Ct. 56, 136 L. Ed. 2d 19 (1996).

62.     Under this principle, "lawyers who fetch above-average rates are presumptively

entitled to them, rather than to some rate devised by the court." Gusman, 986 F.2d at 1150;

accord In re Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.)

("Generally, so long as the rates being charged are the applicant's normal rates charged in

bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of

reasonableness.").

63.     "Only if an attorney is unable to provide evidence of her actual billing rates

should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the

community charge paying clients for similar work.'" Mathur v. Board of Trs. of S. Ill. Univ.,

317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d

544, 555 (7th Cir. 1999)); see also Gusman, 986 F.2d at 1151 ("the ability to identify a

different average rate in the community" is an impermissible reason to depart from an

attorney's billing rate).

64.     Accordingly, because Seyfarth bills the vast majority of its time at a set rate for

paying clients and spends only a very small percentage of time on cases covered by fee-shifting

statutes, "there is a strong presumption that such counsel could have billed out remaining time

at the rate normally charged." In re Farley, Inc., 156 B.R. at 211.

65.     Additionally, under generally accepted standards, if the services of an attorney

employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be

compensable. See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax

21

Distributors, Inc.),157 F.3d 414, 421 (5th Cir. 1998); _In re_ Ames Dep't Stores, Inc., 76 F.3d

66, 71 (2d Cir. 1996); 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed.

rev. 1999); cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I). In this same context, "[n]ecessary services are

those that aid the professional's client in fulfilling its duties under the Code." _In re_ Ben

Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

66.   Thus, the determination of benefit to the estate is not constrained to a dollar-for-

dollar measurement, such that each dollar's worth of legal services must bring a cash dollar

into the estate in order to justify equivalent compensation to counsel. See _In re_ Lifschultz Fast

Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have

always included services that aid in the administration of the case and help the client fulfill

duties under bankruptcy law, whether or not those services result in a monetary benefit to the

estate."); accord _In re_ Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7

(Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors

other than the economic impact on the estate of actions taken should be considered in the

'benefit to the estate' analysis"); _In re_ Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind.

1993) (same); see, e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or interim trustee)

performs necessary services when he carries out the duties set forth in § 704 of the Code.");

JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (_In re_ JMP-Newcor Int'l,

Inc.), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy

court's award of fees to firm for advising committee in reasonable way and in good faith

despite lack of direct monetary benefit to debtor and estate).

67.   Instead, other factors, such as "whether the services rendered promoted the

bankruptcy process or administration of the estate in accordance with the practice and

procedures provided under the Bankruptcy Code and Rules for the orderly and prompt

disposition of bankruptcy case and related adversary proceedings," also support awards of

compensation. *In re* Spanjer Bros., Inc., 191 B.R. at 748.

68.     As previously stated, the legal services for which Seyfarth requests allowance and

payment of compensation relate to the Application Period, and were rendered in connection

with the Cases and in the discharge of Seyfarth's professional responsibilities as counsel to the

Trustee during that time.

69.     Seyfarth respectfully submits that such legal services have, in all respects, been

reasonable, necessary, and beneficial to the Debtors' Estate.  In this connection, these services

were performed within a reasonable amount of time commensurate with the complexity,

importance, and nature of the matters which they concerned.

70.     Further, they promoted the bankruptcy process and the administration of the

Debtors' Estate and supported the Trustee in fulfilling his statutory duties, all in accordance

with the Bankruptcy Code and Rules.

71.     For purposes of this Application, Seyfarth has computed the Fees on the basis of

its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated

to the Cases at the time that such services were rendered.

72.     Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar"

rate—during the Application Period was $422.90.

73.     During the Application Period, Seyfarth's discounted hourly billing rates for

professionals providing services in the Case ranged from:  (A) $305.00 to $690.00 for

attorneys, and (B) $90.00 to $300.00 for paralegals or para-professionals.  Based upon all of

16044475v.1

the foregoing, Seyfarth respectfully submits that the fair and reasonable value of the legal

services that it rendered during the Application Period is $130,001.50.

74.    In all these respects, the compensation which Seyfarth has requested herein is

reasonable based upon the customary compensation charged by comparably-skilled

practitioners in either non-bankruptcy or bankruptcy cases.

75.    Moreover, it is less than the fees which Seyfarth would have received for

providing legal services to its non-bankruptcy clients, and thus represents even less than its lost

opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of

employment by the Trustee in the Cases precluded such employment.

76.    In rendering legal services to the Trustee, and in making this Application,

Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not

sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v.

Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

77.    Finally, and with respect to new considerations added to the Bankruptcy Code

under BAPCPA—that is, the new "relevant factor" of whether a professional "is board

certified or otherwise has demonstrated skill and experience in the bankruptcy field,"  11

U.S.C. § 330(a)(3)(E) (2006)—Seyfarth has attached its Attorney Biographical Information

hereto as Exhibit 1.  The Attorney Biographical Information sets forth the qualifications of the

Seyfarth attorneys listed herein, including their demonstrated skill and experience in the

bankruptcy field, both in the local Chicago market and in representation of clients in matters

nationwide.

24

## B. Expense Reimbursement Standards

78.     With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

79.     "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client."  *In re* Spanjer Bros., Inc., 191 B.R. at 749;  see *In re* Wildman, 72 B.R. at 731.

80.     In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that the Expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Cases.  As previously indicated, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

81.     Seyfarth submits that the Expenses are reimbursable and do not constitute "overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939;  Wildman, 72 Bankr. at 731.  Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost."  *In re* Thacker, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47 Bankr. at 584)[2].

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.);  see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable.");  see also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost.");  see, e.g., Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such as rent, heat, and the like*, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added)

82.     In contrast, Seyfarth charges for its out-of-pocket expenses only, including the

incurred Expenses, to the particular clients who use them—in this instance, the Debtors'

Estate.  As previously discussed, the incurred Expenses included herein are neither taken into

consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

83.     Such "user fee" expense billing closely adheres to the Seventh Circuit's market

rate billing approach.  In this respect, the Seventh Circuit's market approach to compensation

extends equally to the reimbursement of expenses, including those for online research.  See *In

re* Hunt's Health Care, Inc., 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993);  accord *In re*

Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a

relevant factor in setting compensation for services under [330](a)(1), it would logically seem

also to be a relevant factor in determining what categories to treat as reimbursable expenses

under (a)(2).").

84.     For example, in Continental Illinois Securities, supra, the Seventh Circuit

reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket
> expenses of using a computerized legal research service (LEXIS).  He thought
> those expenses should be part of the lawyers' overhead.  This was another
> clear error.  If computerized research expenses were customarily treated in
> this fashion, lawyers' hourly rates would be even higher than they are,
> requiring an adjustment in the lodestar.  *But the more important point is that
> the market—the paying, arms' length market—reimburses lawyers' LEXIS
> and WESTLAW expenses, just as it reimburses their paralegal expenses,
> rather than requiring that these items be folded into overhead*.  Markets know
> market values better than judges do.  And as with paralegals, so with
> computerized research:  if reimbursement at market rates is disallowed, the
> effect will be to induce lawyers to substitute their own, more expensive time
> for that of the paralegal or the computer, 962 F.2d at 570 (emphasis added);
> accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir. 1991) ("The
> attorneys also claim that the court erred in excluding the roughly $10,000
> expended in computer-assisted research.  The court felt that the expense 'is
> part of the amount allowed for attorney's fees.'  *We must reverse the district
> court here*.  Computer-assisted research fees—so long as reasonably

26

incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable[. . . . as] expenses[.]") (emphasis added).

85.    The Seventh Circuit has remained consistent on this subject and has repeatedly required attorney reimbursement for computerized legal research charges.  See, e.g., Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn our attention to the award of costs, we consider MTC's request that the costs of computerized legal research be subtracted from the award.  *MTC claims that these expenses are better characterized as overhead in the same way that maintenance of a law firm library is.  We reject this claim.*") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996).

86.    Accordingly, lower courts in this District—including numerous judges of this Court—have adhered to this controlling precedent.  See, e.g., Shula v. Lawent, 2004 U.S. Dist. LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal research charges" as "costs" that were "both reasonable and necessary");  Stamm v. Provident Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a reasonable expense of litigation.");  *In re* Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992) (Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United States (*In re* Price), 42 F.3d 1068 (7th Cir. 1994);  *In re* Met-L-Wood Corp., 103 B.R. 972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as "'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990);  *In re* Prairie Cent. Ry. Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the Court to allow reimbursement of Lexis  and Westlaw research charges);  *In re* Wildman, 72

27

B.R. at 732 ("This Court adopts the view that computer research time that is both necessary and attributable to a particular client *or* case is reimbursable under Section 330(a)(2).") (emphasis in the original); *In re* UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), *Order Approving Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses* (Docket No. 15670) (allowing full reimbursement of $8,085.93 in online legal research charges); *In re* Eagle Food Centers, Inc., Case No. 03-15299-CAD (Doyle, J.), *Order Approving Third And Final Application Of Skadden, Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And Reimbursement Of Expenses* (Docket No. 1136) (allowing full expense reimbursement of $21,888 in "Computer Legal Research" during case period) (unpublished decision); *In re* Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), *Order Approving Final Application Of Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And Reimbursement Of Expenses* (Docket No. 6987) (allowing expense reimbursement of $139,934.07, including Westlaw and Lexis charges); *In re* Wickes, Inc., Case No. 04-02221-BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses* (Docket No. 2935) (allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

87.    Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid down guidelines, and cautioned, that an applicant "[is not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [ ] [is] required to provide the best breakdown obtainable from retained records."

Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

88.    In seeking reimbursement for the Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

## VIII.  **NO PRIOR REQUEST**

89.    No prior request for the relief requested by this Application has been made to this Court or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.    Finding Notice of the Application sufficient as given and that no other or further notice is necessary;

B.    Allowing and awarding Seyfarth on a final basis the Fees and Expenses;

C.    Authorizing the Trustee to make payment of such Fees and Expenses to Seyfarth from the Debtors' Estates, and

D.    Granting such other and further relief as this Court deems just and appropriate.

Dated:  February 13, 2017                       Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 7 Trustee of  the Consolidated Debtors

By: /s/ James B. Sowka_____
    Gus A. Paloian (06188186)
    James B. Sowka (6291998)
    Christopher J. Harney (6296683)
    SEYFARTH SHAW LLP
    131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
    Telephone:  (312) 460-5000

*Counsel to Chapter 7 Trustee Gus A. Paloian*

29

16044475v.1